IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| DAVIS NEUROLOGY, P.A.  on<br>behalf of itself and all other entities and<br>persons similarly situated, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | CASE NO. 4:16-cv-00095 |
| vs. | ) <br> ) | JUDGE BRIAN S. MILLER |
| DOCTORDIRECTORY.COM, LLC,<br>EVERDAY HEALTH, INC and<br>JOHN DOES 1-10, intending to refer<br>To those persons, corporations or other legal<br>Entities that acted as agents, consultants,<br>Independent contractors or representatives | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | JURY DEMAND |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
## MOTION FOR JUDGMENT ON THE PLEADINGS

Now comes the Plaintiff, Davis Neurology, P.A.("Plaintiff") and files this response

opposing the motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by

Defendants Doctordirectory.com, LLC and Everyday Health, Inc. ("Defendants").  The Court at

this stage must accept the factual allegations in the complaint as true, draw all reasonable

inferences drawn in favor of Plaintiff, must assume that all contravening assertions by

Defendants are false and find no disputed issues of material fact.  Measured against this standard,

Defendants' motion fails by a wide margin.

The complaint sets forth numerous and detailed allegations that Defendants, two for-

profit "pharmaceutical marketing" companies, violated the Telephone Consumer Protection Act

("TCPA" or "the Act"), 47 U.S.C. § 22 by sending unsolicited faxes advertising the commercial

availability of their services to the fax machines of Plaintiff and others in the putative class

1

action without their prior consent and without the required opt-out information.  Specifically,

Plaintiff alleges that Defendants sent a "clinical research survey" fax in question is mere pretext

for luring medical professionals to Defendants' website in order to obtain registration and other

user information[1] so it may send users "promotional/marketing information"[2] and share this data

to third-party advertisers.[3]  Because the fax advertisement was sent without Plaintiff's consent,[4]

and because it lacked the required opt-out language,[5] Plaintiff alleges that Defendants violated its

rights under the TCPA.

Although Defendants dispute Plaintiff's claims that the fax is merely a gateway to

advertise Defendants' commercial marketing business, the Court is bound as this stage to

disregard Defendants' own characterizations and accept the well-plead factual allegations as true

and in the light most favorable to Plaintiff.  Moreover, Defendants' primary argument—that the

faxes in question "contain only information"[6]—is belied by allegations demonstrating that the

fax explicitly invites the recipient to register their contact information at Defendants' website "as

soon as possible,"[7] which binds the user to a "Medical Professional User Agreement and Privacy

Policy" allowing Defendants' virtually unlimited commercial use of any data or information

---

[1] Dkt. 3 at ¶26. (First Amended Complaint)

[2] *Id*. at ¶17.

[3] *Id*. at ¶15.

[4] *Id.* at ¶27.

[5] *Id*. at ¶¶28-29.

[6] Dkt. 22 at p. 9. (Defendants' Memorandum in Support of Their Motion for Judgment on the Pleadings)

[7] Dkt. 3, Exh. A.

gained by the user's access.[8]   Defendants' arguments to the contrary about the true purpose and intent of the fax at best merely raise disputed issues of fact that will ultimately be sorted out through discovery. Arguing that Plaintiff is "misguided"[9] is not valid grounds to grant judgment on the pleadings.

Finally, contrary to Defendants' argument in their motion, the recent U.S. Supreme Court decision in *Spokeo, Inc., v. Robins,* 136 S. Ct. 1540 (U.S. 2016), *as revised* (May 24, 2016) did ***not*** overrule the Eighth Circuit's "clear directive" that "a violation of the TCPA confers standing."[10]   *Spokeo* merely affirmed that Article III standing requires a plausible allegations of "concrete and particularized" injury, which is satisfied here by both the *de facto* injury alleged to Plaintiff's TCPA rights as well as any alleged compensatory damages (lost time and spent resources) incurred by Plaintiff by receiving the offending fax advertisement.

For these reasons, as well as those detailed below, Defendants' motion should be denied.

## **ARGUMENT**

### I. **In Considering the Motion, the Court Must Accept the Complaint's Allegations as True, Draw All Reasonable Inferences in Favor of the Plaintiff, and Assume All Contravening Assertions By Defendants Are False**

Courts in the Eighth Circuit are directed to review a Rule 12(c) motion for judgment on the pleadings under the same standard that governs a motion to dismiss under Rule 12(b)(6). *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 912-13 (8th Cir. 2014). Therefore, the Court must consider whether Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. Ark. 2015)

---

[8] *Id.* at ¶¶11-18.

[9] Dkt. 22 at p.11.

[10] *See* Dkt. 18 at p. 2 (Order Denying Defendants' Motion to Stay).

(*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  To be plausible, "[t]he facts alleged in the complaint must be enough to raise a right to relief above the speculative level." *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (internal quotation omitted).

In considering such a motion, the Court must assume that all of the well-pleaded factual allegations in the complaint are true, construe the facts "in a light most favorable to plaintiff," and make all reasonable inferences in the non-movant's favor. *Greenman v. Jessen*, 787 F.3d 882, 885 (8th Cir. Minn. 2015) (citing *Poehl v. Countrywide Home Loans, Inc*., 528 F.3d 1093, 1096 (8th Cir. 2008)); *see also Wishnatsky v. Rovner,* 433 F.3d 608, 610 (8th Cir.2006). Conversely, the Court shall assume that all contravening assertions by the Defendants are false. *Rimmer v. Colt Indus. Operating Corp*., 656 F.2d 323, 326 (8th Cir. 1981) (citing *Quality Mercury, Inc. v. Ford Motor Co*., 542 F.2d 466, 468 (8th Cir. 1976), *cert. denied,* 433 U.S. 914, 97 S. Ct. 2986, 53 L. Ed. 2d 1100 (1977).

In the Eighth Circuit, it has long been "the policy of the courts…to dispose of law suits on their merits whenever possible rather than on motions for judgments on pleadings." *Roemhild v. Jones*, 239 F.2d 492 (8th Cir. Ark. 1957).  Thus, the grant of a motion for judgment on the pleadings is "appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a latter of law." *Greenman*, 787 F.3d at 887 (*citing Ashley County, Ark. v. Pfizer, Inc*., 552 F.3d 659, 665 (8th Cir. 2009)).  "If all material issues cannot be resolved from the pleadings, a summary judgment motion or a full trial is necessary." *Dunham v. Portfolio Recovery Assocs*., LLC, 2009 U.S. Dist. LEXIS 104952 (E.D. Ark. Nov. 10, 2009) (citing 5C Charles Alan Wright & Arthur R.Miller, Federal Practice &Procedure § 1368, at 248-50 (3d ed. 2004)).

4

**II.     Defendants' Fax Is An Unsolicited Advertisement And Thus Subject To the TCPA**

**A.     The Fax advertises the commercial availability of Defendants' services and serves as a precursor to future solicitation.**

The complaint here either alleges non-speculative facts demonstrating that the Defendants' fax is an "unsolicited advertisement," in which case Plaintiff has plausibly stated a claim under the TCPA, or has not and thus fails to state a claim.  Defendants' own characterization of the fax is immaterial to this analysis and should be disregarded.  *See Brodsky v. HumanaDental Ins. Co.,* No. 10 C 3223, 2014 WL 2780089, at *7 (N.D. Ill. June 12, 2014), *opinion modified on denial of reconsideration,* No. 10 C 3233, 2014 WL 4813147 (N.D. Ill. Sept. 29, 2014)(defendant's characterization of faxes as informational communications "not relevant to the question of whether the faxes were 'advertisements'").

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(5). Defendants' offending fax, attached as Exhibit A to the operative complaint, induces the recipient to visit its website as part of an overall marketing scheme to both transmit offers to the user and harvest their information to package and sell to third-parties.  The fax in question is a so-called "Physician Bulletin System" communication from "DoctorDirectory.com," which describes itself as a "privately-held, multi-channel pharmaceutical marketing services company."[11] The fax openly on its face and in bold-face type encourages the recipient to visit Defendants' commercial website "as soon as possible" in order to partake in a study and answer "a few screener questions" in exchange for a $15 honorarium. *See id.*  The complaint then lays

_____

[11] Dkt. 3 at ¶11.

bare the commercial advertising purpose of the fax in describing what awaits fax recipients who answer the invitation:

- They agree to allow their user contact information and other data to be collected by Defendants.[12]

- They agree to allow Defendants to "deliver customized advertising to [users] on th[e] site, on the Services and on other digital and offline media channels."[13]

- They agree to future solicitations from Defendants and third parties with whom Defendants do business.[14]

- They automatically agree and consent to the so-called "Medical User Agreement and Privacy Policy" posted on DoctorDirectory.com, which make it clear that the website's purpose is the collection of user data for use in marketing purposes.[15]

Additionally, the complaint describes how DoctorDirectory.com self-associates and shares business address with co-Defendant EverydayHealth, whose business is also fundamentally driven by advertising and sales.[16] *See also Kane v. Waterfront Media, Inc.,* 2008 N.Y. Misc. LEXIS 10796 (N.Y. Sup. Ct. Aug. 20, 2008) (citing testimony of an EverydayHealth

---

[12]Dkt. 3 at ¶¶12, 14-16 (listing user information collected as including, among other things, "name, specialty, NPI number, country of residence…and users' internet usage data and cookies.")

[13] *Id*. at ¶11.

[14] *Id*. at ¶¶ 14-15, 17, 25.

[15]*Id*. at ¶12.

[16] *Id*. at ¶¶19-22

Vice President discussing company sales through EverydayHealth.com and "integrated advertising partnerships for potential clients/advertisers.").[17]

Along with all other well-plead allegations in the complaint,[18] construed as true and viewed most favorably to Plaintiff's claim, these facts establish that the fax sent by Defendants is an unsolicited advertisement on its face, or at worse, is pretext for advertising Defendants' services, because it directs users to Defendants' commercial website and enables the collection of users' information for both direct and third-party marketing.

### B.  The commercial advertising purpose of the fax need not be evident on its face

For a cause of action to arise under TCPA, an unsolicited fax need not "make an overt sales pitch to its recipients." *Green v. Time Ins. Co.,* 629 F.Supp.2d 834, 837 (N.D. Ill. 2009). Rather, an unsolicited fax will violate the Act where it "serve[s] as a pretext to advertise commercial products and services" or is "part of an overall marketing campaign to sell property, goods, or services." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. R. 3787, 3814 (Apr. 6, 2006) [hereafter *Rules & Regulations*]. Similarly, the FCC states that a fax that does not promote a product or service on face may still violate the statute if the communication serves as a precursor to future solicitation.  *See Rules & Regulations* at 3814 (faxes offering "free" seminars frequently constitute unsolicited advertisements under TCPA as they "serve as a pretext to advertise commercial products and services"; same for faxes offering "free" publications as they "are often part of an overall marketing campaign to sell property, goods, or services").

---

[17] In deciding a motion for judgment on the pleadings, courts may consider "matters of public record" such as court opinions.  *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and quotation omitted).

[18] *See generally* Dkt. 3 at ¶¶11-26.

Defendants assert that since their fax, on its face, "did not promote any commercial goods or services," it "cannot, as a matter of law, be interpreted as "commercial" in nature."[19] This characterization is not only irrelevant to the analysis here, but also misstates the law.  The allegations in the complaint state that the true nature of the fax is an attempt to reach persons in the health care industry in order to advertise Defendants' services.  The Defendants' fax, while purporting to be an invitation to participate in a survey, is in fact a mere pretext for advertising the company's services to medical professionals.

Plaintiff's allegations largely mirror the facts in *North Suburban Chiropractic Clinic, Ltd. V. Merck & Co., Inc.,* No. 03 C 3113, 2013 WL 5170754 (N.D. Ill. Sept. 13, 2013).  There, the Northern District of Illinois denied a motion to dismiss where defendant sent a fax promoting a free seminar aimed at "medical education program for health care professionals only" .2013 WL 5170754 at *1.  Although the fax in question did "not mention explicitly any of Defendant's commercially available products or services or express an intent by Defendant to market its product or services," the complaint alleged facts showing it to be "part of the work or operations to market its goods and services".  *Id.* at *4.   The fax at issue there was alleged to direct the recipient (medical professionals) to register for the event via a URL listed on the communication, which led to the defendant's website, where would-be participants were then required to enter detailed contact information and consent to receiving additional promotional materials from defendant's company.  *Id.* at *2.  The court deemed it plausible to conclude defendant's fax invitation to free webcast was pretext to market its goods and services where recipients had to register at defendant's corporate website and registration required participants to agree that defendant could contact them in future regarding product information, special offers, etc.  *Id.* at

---

[19] Dkt. 22 at p. 11.

*4.  *See also, Padlo Sign & Display Co. v. Wagener Equities, Inc.,* 67 F. Supp. 3d 874, 881-82 (N.D. Ill. 2014) (holding fax transmitted by defendant for purpose of directing traffic to free database of industrial real estate listings owned and managed by defendant constituted an advertisement under TCPA as a matter of law).

Similarly, in *Golan v. Veritas Entm't, LLC*, 788 F.3d 814 (8th Cir. 2015), recipients of phone calls from a marketing firm were asked to participate in a survey about "traditional American values," after which they were given information about where to view promotional trailers for the movie *Last Ounce of Courage*, although the prerecorded script never identified the film by name.  *Golan v. Veritas Entm't, LLC*, F.3d at 820.  The Eighth Circuit found that this ploy constituted a violation of TCPA, noted in relevant part that "[n]either the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* at 820, 821*, citing Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012).  This is consistent with the FCC's view that "any surveys that serve as a pretext to advertisement are subject to the TCPA's facsimile advertising rules." *Rules & Regulations* at 3815.

The holdings in *North Suburban Chiropractic* and *Golan* are consistent with the panoply of decisions sustaining a claim under the TCPA for unsolicited fax communications which, although they may appear innocuous on their face, are mere subterfuge for a larger marketing effort aimed at garnering profit through the recipients' patronage or the use of their valuable personal data.[20]

---

[20] *See, e.g., Addison Automatics, Inc. v. RTC Grp., Inc.,* No. 12-CV-9869, 2013 WL 3771423, at *3 (N.D. Ill. July 16, 2013) (complaint sufficiently maintained TCPA violation where plaintiff plausibly alleged fax offering free "technical seminar" on embedded computer technology would have been used to market defendants' products and services and where fax recipients had to visit products' website to register for seminar); *Physicians Healthsource, Inc. v. Alma Lasers, Inc.,*

**C.  There is no so-called "research exception" to the TCPA**

Neither the TCPA nor its promulgating regulations contain any supposed "research exception."  The FCC Rules and Regulations guiding interpretation of the TCPA exempt communications that are purely "informational messages" from liability under the statute.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. R. 3787, 3814-15 (Apr. 6, 2006) [hereafter *Rules & Regulations*]. Examples of permissible "information" faxes include "industry news articles, legislative updates, or employee benefit information."  *Rules & Regulations* at 3814.  There is no exception for "research" faxes, despite Defendants' efforts to categorize the offending communication in this matter as such.  Defendants' contention that the fax received by Plaintiff and the class was purely "informational" is not only irrelevant for the purposes of resolving the present motion, but as detailed above, it is also flatly contrary to the well-plead facts in the complaint.

Defendants' cases cited in support of its motion are inapposite, and do not avail its proposed "research exception."  It is absurd to argue that the Defendants' two-minute market research "study" described in Exhibit A to the complaint is comparable to the invitations for the endeavors described in Defendants' cited authorities.  *See Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc.,* 526 F.Supp.2d 851, 853 (N.D. Ill. 2007) (research

---

No. 12 C 4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) (distinguishing *Phillips Randolph* and *Ameriguard* from complaint where plaintiff alleged defendant used free seminars described in faxes as a way to market its goods); *Neurocare Inst. of Cent. Florida, P.A. v. Healthtap, Inc.,* 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014) (plaintiffs sufficiently pled that faxes related to the "commercial quality or availability" of defendant's services when faxes directed recipients to defendant's website, the purpose being to connect doctors to potential patients).

discussion sponsored by the Chicagoland Chamber of Commerce) and *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.,* No. 06-0369-CV-W-ODS, 2006 WL 1766812 at *1 (W.D. Mo. June 23, 2006), *aff'd*, 222 Fed. Appx. 530 (8th Cir.) (clinical drug trial). Moreover, the *North Suburban Chiropractic* court distinguished the fax communication in *Phillips Randolph* partly on the basis that it lacked allegations "'that the fax was a pretext to an advertisement.'" *N. Suburban Chiropractic*, 2013 WL 5170754 at *3, *citing Phillips Randolph*, 526 F.Supp.2d at 853.   Nor did do *Phillips Randolph* or *Ameriguard, Inc.* involve allegations that the defendants intended to use the fax recipient's contact information and other data to send them direct marketing solicitations and for third-party marketing promotion purposes.   These cases can be easily distinguished from the extensively-plead facts in Plaintiff's complaint.

Defendants' argument that the fax targeted health care professionals, rather than the public at large, does not make it non-commercial or not an advertisement.  *Brodsky,* 2014 WL 2780089, at *8 (defendant's characterization of fax irrelevant to the question of whether it is an 'advertisements'). Nor does the fax enjoy any protections under the TCPA merely because it purportedly limits its reach to certain individuals meeting "eligibility" requirements. While Exhibit A vaguely alludes to some sort of eligibility requirement, it does not describe the qualifications for participation in the "study."  Furthermore, unlike the fatally deficient complaint in *Phillips Randolph*, Plaintiff has explicitly alleged "that the survey offered in the fax is a mere pretext for advertising the commercial availability or quality of DoctorDirectory's services, and the collection of users' private information for the use in commercial advertising" and pled facts in support of that contention.[21]  As such, Plaintiff's TCPA claim should survive Defendant's motion.

---

[21] Dkt. 3 at ¶ 26.

### D. Determining the advertising purpose of a fax is fact intensive and conducted on a case-by-case basis

Plaintiff believes that Defendants' motion should be denied due to the numerous and detailed allegations in the complaint demonstrating a plausible claim under the TCPA, its rules and regulations, and the interpretive case law, that the Defendants' fax is a mere pretext for commercial advertisement. But even if Plaintiff's allegations merely raise a material issue of disputed fact about the advertising intent of the fax in question, the Court should still deny the motion for judgment on the pleadings. *See St. Louis Heart Ctr., Inc. v. Caremark, L.L.C.*, No. 4:12CV2151 TCM, 2013 WL 9988795, at *2 (E.D. Mo. Apr. 19, 2013), *citing G.M. Sign, Inc. v. MFG Com, Inc.,* 2009 WL 1137751, *2 (N.D. Ill. Apr. 24, 2009) (the determination of whether a communication constitutes an informational message or an unsolicited advertisement for TCPA purposes "must be made on a case-by-case basis"). Because this inquiry is widely-regarded as highly fact-intensive, many courts confronted with well-plead allegations similar to those here have overruled pre-discovery motions for dismissal and/or judgment on the pleadings, properly deferring this dispute until summary judgment.[22]

---

[22] *See, e.g., St. Louis Heart Ctr., Inc. v. Caremark, L.L.C.*, No. 4:12CV2151 TCM, 2013 WL 9988795, at *3 (E.D. Mo. Apr. 19, 2013) (denying motion to dismiss TCPA claim premised on fax from pharmaceutical manufacturer inviting physician to participate in discussion regarding hypertension); *Holtzman v. Turza*, No. 08 C 2014, 2008 WL 2510182, at *2 (N.D. Ill. June 19, 2008) (denying motion to dismiss where attorney defendant's identifying information on fax constituted an announcement of the availability of his legal services); *AL & PO Corp. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 14 C 01893, 2014 WL 6999593, at *3 (N.D. Ill. Dec. 10, 2014) (denying motion to dismiss where plaintiffs alleged defendant sent fax in order to cultivate a base of subcontractors with the goal of ultimately selling its goods and services through them); *G.M. Sign, Inc. v. MFG Com, Inc.,* 2009 WL 1137751, at *3 (N.D. Ill. Apr. 24, 2009)(declining to grant motion to dismiss where plaintiff alleged defendant's unsolicited fax "promoted an online marketplace where it hopes to connect buyers and sellers of manufactured goods and services"); *Eden Day Spa, Inc. v. Loskove*, No. 14-81340-CIV, 2015 WL 1649967, at *3 (S.D. Fla. Apr. 14, 2015) (denying motion to dismiss and concluding "conducting an analysis as to whether the fax was part of an overall marketing campaign, and therefore is an advertisement, will require an inquiry that goes beyond the four corners of the Complaint").

### III.     Plaintiff Alleges Sufficient Injury for Article III Standing, Even Post-*Spokeo*

Defendants' motion reprises the same theories regarding standing that the Court overruled in their earlier unsuccessful motion to stay discovery.[23]  The crux of Defendants' arguments then and now is that a statutory violation of the TCPA is insufficient to confer Article III standing and Plaintiff must allege a concrete and particularized injury.[24]  Although the U.S. Supreme Court has since issued its ruling in *Spokeo, Inc., v. Robins,* 136 S. Ct. 1540 (U.S. 2016), *as revised* (May 24, 2016), it has not altered the status of the law in the Eighth Circuit under which Plaintiff's claim for violation of its rights under the TCPA and for any compensatory damages it suffered as a result confers it standing to bring this case.

The Court previously acknowledged in this case that Eight Circuit case law on this issue is "clear: a plaintiff has standing for violations of some federal statutes even if concrete harm has not been alleged."[25] This notion is confirmed specifically as to a statutory violation of the TCPA through the decision in *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820-821 (8th Cir. 2015), a ruling that issued after the Supreme Court had granted certiorari in *Spokeo*.[26]  Furthermore, as Plaintiff alleged in its opposition to the motion to stay, this ***precise*** issue was just analyzed under binding Eighth Circuit precedent in *Degnen v. Komet USA, LLC*, 2016 U.S. Dist. LEXIS 10034, 1-5 (E.D. Mo. Jan. 28, 2016) (J. Ross).  The plaintiff in *Degnen* argued that the TCPA's conferral of a statutory private cause of action is sufficient to meet an injury-in-fact requirement. *Id.* at *2 .  Judge Ross agreed, and noted the upcoming "*Spokeo* decision is unlikely to affect

---

[23] Dkt. 13 (Defendants' Motion to Stay Discovery).

[24] Dkt. 22 at p. 12.

[25] Dkt. 18, Order, p. 1 (*citing Hammer v. Sam's E, Inc.,* 754 F.3d 492, 498-99 (8th Cir. 2014)).

[26] *Id*. at p.2.

Plaintiff's entitlement to relief for harm caused by Defendant's alleged violations of the TCPA." *Id.* at *4-5. The *Degnen* court also denied defendant's motion to stay on the grounds that plaintiff there alleged an actual injury-in-fact separate and apart from its statutory remedy: namely, invasion of privacy and the "unwanted use and destruction of [plaintiff's] property, including toner or ink and paper, and . . . undesired wear on hardware." *Id.* at *4.

The Supreme Court's recently issued decision in *Spokeo* does ***not*** overrule the Eighth Circuit's "clear directive" that "a violation of the TCPA confers standing."[27] In *Spokeo*, the Supreme Court ruled that, in the context of the particular case before it, an allegation of a bare procedural violation of the Fair Credit Reporting Act (listing of incorrect personal information on "people search engine" website) might be insufficient to confer Article III standing without some showing of concrete harm. *Spokeo v. Robins*, 136 S. Ct. at 1550. Rather than decide whether the plaintiff had adequately alleged "concrete and particularized" injury, the Supreme Court remanded the case to the Ninth Circuit with an instruction to analyze the issue for themselves considering both particularization and concreteness. *Spokeo* at 1545, *citing Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180-181, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000). Courts recently considering *Spokeo's* impact on Article III standing for TCPA claims have concluded that it does not affect subject matter jurisdiction other than reiterating the requirement for "concrete injury." *Booth v. Appstack, Inc.*, 2016 U.S. Dist. LEXIS 68886, at *15-17 (W.D. Wash. May 24, 2016) (concrete injury for Article III standing found for TPCA claim where plaintiff wasted time answering robocalls); *see also Rogers v. Capital One Bank (USA), N.A.,* No. 1:15-CV-4016-TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016)("a violation of the TCPA is a concrete injury").

---

[27] Dkt. 18 at p. 2.

Defendants' badly mischaracterize the holding in *Spoke*o and overreach when in attempting to apply it to claims arising under the TCPA, including this one, where concrete injury necessarily accompanies a statutory violation.  In *Spokeo*, the Court noted that in determining whether an alleged procedural violation can constitute a concrete injury, "both history and the judgment of Congress" are instructive. 136 S. Ct. at 1549.  Where the legislature has recognized a *de facto* injury in statute, "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).  The purpose of the TCPA and its legislative history demonstrate that a statutory violation necessarily entails injury-in-fact:

> "In enacting the TCPA, Congress noted "the proliferation of facsimile machines" in the business community had been "accompanied by explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. 102–317 at 10 (1991). Congress further stated that such advertising "is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." *Id.* The recipient of the facsimile advertisements assumes both the cost associated with the use of the facsimile machine and the cost of the paper. In addition, when receiving the facsimile, it may require several minutes or more to process and print the advertisement. During that time, the facsimile machine is unable to process actual business communications. *Id.* at 25. Thus, the statute's legislative history indicates that the TCPA was intended to address the costs incurred by the owner of the facsimile machine and the facsimile machine owner's loss of the use of the machine."

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* No. 3:12 CV 2257, 2014 WL 6750690, at *2 (N.D. Ohio Dec. 1, 2014).  The shifting of costs of advertising to the fax recipient, in addition to other "costs incurred by the owner of the facsimile machine" – namely operational costs for the machine, paper, and the risk of losing legitimate business while the machine is tied up with unsolicited advertisements – clearly constitute injuries-in-fact sufficient to confer Article III standing. *Id.*

Plaintiff's complaint alleges both that the offending fax both violated its statutory rights under the TCPA, thus causing a *de facto* injury under the Act,[28] and alleges a claim compensatory damages and/or other appropriate relief in an amount to be determined at trial in addition to the statutory damages to which it is under the TCPA.[29]   The complaint thus alleges that Plaintiff suffered a "concrete" harm sufficient to demonstrate Article III standing under Eighth Circuit precedent and in accordance with *Spokeo*.

## CONCLUSION

For the foregoing reasons, the Defendants' motion for judgment on the pleadings should be DENIED.

DATED: June 23, 2016                Respectfully submitted,

By:     /s/ James A. Streett
James A. Streett, ABA#2007092
Alex G. Streett, ABA#65038
Robert M. Veach, ABA#2009165
107 West Main Street
Russellville, AR 72801
Telephone:  (479)968-2030
Facsimile:     (479) 968-6253
Email: Alex@StreettLaw.com
            James@StreettLaw.com
            Robert@StreettLaw.com

BRANSTETTER, STRANCH &
JENNINGS, PLLC
Joe P. Leniski, Jr. (TN No. 22891)(PHV)
The Freedom Center
223 Rosa Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
jleniski@branstetterlaw.com

---

[28] Dkt. 3 at ¶¶27-36.
[29] Dkt. 3 at ¶41, Prayer for Relief.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 23, 2016, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record.

/s/ James A. Streett
James A. Streett, ABA#2007092